
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  39384-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ISAIAH THOMAS OLIVER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Isaiah Oliver appeals from a conviction for first degree unlawful possession of a firearm following a bench trial.  He argues: (1) defense counsel was ineffective for failing to bring a motion to suppress the firearm observed by Officer Clay Pierson with the aid of a flashlight while looking through the window of a vehicle at night, and (2) the trial court erred in finding that the plain view exception to the warrant requirement applied.  We disagree with both arguments and affirm.

BACKGROUND

Officer Pierson was employed by the Kalispell Tribal Police Department.  On the date of the incident in question, Officer Pierson was on duty and conducting a daily prowl check at an apartment complex.  While at the complex, he noticed a bright green Dodge Charger with its lights on, parked at the complex's office even though the office was

closed. Officer Pierson was fairly familiar with vehicles in the complex and had never seen the Charger before, and there were not usually vehicles parked in that area with their lights on.

Officer Pierson left the apartment complex to respond to a welfare check at a nearby casino. At the casino he noticed the same Charger and saw two individuals exiting the vehicle. After Officer Pierson conducted the welfare check, he returned to the Charger and shined his flashlight through the driver's side window. He immediately observed a firearm "tucked in the driver's seat and the center console." Rep. of Proc. (Nov. 7, 2022) at 128.

Officer Pierson learned that the passenger of the vehicle was Isaiah Oliver and that he and the driver were both prohibited from possessing firearms.

Oliver was placed under arrest, and the State charged him with first degree unlawful possession of a firearm. He waived his right to a jury trial and the case was tried to the bench.

At trial, Officer Pierson testified about his discovery of the firearm. Defense counsel cross-examined Officer Pierson and elicited testimony that the Charger had tinted windows.[1]

---

[1] On appeal, Oliver's counsel argues that Oliver's attorney at trial failed to conduct any cross-examination of Officer Pierson during the bench trial and failed to ask about the tinted windows. *See* Br. of Appellant at 7. This assertion is belied by the record.

Following a bench trial, the trial court found Oliver guilty of one count of first degree unlawful possession of a firearm based on the firearm observed by Officer Pierson in the Charger. The court entered written findings of fact and conclusions of law. Relevant to this appeal, the court found:

> 12) Upon looking in the driver's side door window, Officer Pierson observed a semi-automatic handgun lodged between the driver's seat and the center console of the vehicle in plain view;

> 13) Officer Pierson testified that he also looked in the passenger side door window with the assistance of a flashlight and observed the same semi-automatic handgun lodged between the driver's seat and the center console of the vehicle in plain view from that view[.]

Clerk's Papers (CP) at 93. It also concluded that "Oliver knowingly had a firearm in his possession or control, to wit a Ruger .45 which was in plain view and within his immediate area of control while riding as a passenger in the vehicle." CP at 94.

Oliver appeals.

ANALYSIS

1. INEFFECTIVE ASSISTANCE OF COUNSEL

Oliver argues that defense counsel was ineffective for failing to bring a motion to suppress the firearm observed by Officer Pierson through the window of the Charger. This court disagrees.

Criminal defendants have a constitutionally guaranteed right to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Lopez*,

190 Wn.2d 104, 115, 410 P.3d 1117 (2018). "A claim of ineffective assistance of counsel" is "an issue of constitutional magnitude" that "may be considered for the first time on appeal." *State v. Nichols*, 161 Wn.2d 1, 9, 162 P.3d 1122 (2007). Claims of ineffective assistance of counsel are reviewed de novo. *State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995).

A defendant bears the burden of showing (1) that his counsel's performance "fell below an objective standard of reasonableness based on consideration of all the circumstances" and, if so, (2) that there is a reasonable probability that but for counsel's poor performance, the outcome of the proceedings would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). "If either element . . . is not satisfied, the inquiry ends." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

In reviewing the record for deficiencies, there is a strong presumption that counsel's performance was reasonable. *McFarland*, 127 Wn.2d at 335. "The burden is on a defendant alleging ineffective assistance of counsel to show deficient representation." *Id.* at 335. "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *Kyllo*, 166 Wn.2d at 863.

"If a defendant centers their claim of ineffective assistance of counsel on their attorney's failure to object, then 'the defendant must show that the objection would likely have succeeded.'" *State v. Vazquez*, 198 Wn.2d 239, 248, 494 P.3d 424 (2021) (quoting *State v. Crow*, 8 Wn. App. 2d 480, 508, 438 P.3d 541 (2019)). "'Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal.'" *Id*. (quoting *Crow*, 8 Wn. App. 2d at 508).

Oliver maintains that defense counsel was ineffective for failing to bring a motion to suppress the firearm found in Officer Pierson's initial search of the Charger with the flashlight. He claims that the search was unconstitutional under both the United States and Washington Constitutions. Oliver fails to show that a motion to suppress was likely to succeed.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. "A Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *State v. Muhammad*, 194 Wn.2d 577, 591, 451 P.3d 1060 (2019). Similarly, article I, section 7 of the Washington Constitution states that "'[n]o person shall be disturbed in his [or her] private affairs, or his [or her] home invaded, without authority of law.'" *Id*. at 586 (alteration in original) (quoting article I, sec. 7). Under the Washington Constitution, "a search occurs when the government disturbs 'those privacy interests which citizens of

5

this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant.'" *Id.* (quoting *State v. Myrick*, 102 Wn.2d 506, 511, 688 P.2d 151 (1984)).

Notably, the open view doctrine provides that a detection does not constitute a search "'when a law enforcement officer is able to detect something by utilization of one or more of his senses while lawfully present at the vantage point where those senses are used[.]'" *State v. Bobic*, 140 Wn.2d 250, 259, 996 P.2d 610 (2000) (quoting *State v. Rose*, 128 Wn.2d 388, 392, 909 P.2d 280 (1996)).

There is no argument regarding whether Officer Pierson was permitted to be in the area of the vehicle. Just as Officer Pierson could lawfully be parked outside of the casino, he could also intentionally look through the windows of the vehicle also parked there.

In regard to Officer Pierson's use of a flashlight to look through the window of the vehicle, our Supreme Court has upheld the use of a flashlight under the open view doctrine where the flashlight "does not transform an observation which would fall within the open view doctrine during daylight into an impermissible search simply because darkness falls." *Rose*, 128 Wn.2d at 398-99. "There is no reasonable expectation of privacy in" "contraband [left] in plain sight, visible through" a window. *Id.* at 394, 399. The court in *Rose* explained that employing a flashlight does not render the viewing intrusive because it is an "exceedingly common device." *Id*. at 399.

6

Here, Officer Pierson used a flashlight to aid in looking through the window of the vehicle at night. This use of a flashlight to aid in seeing what would apparently be readily visible during daylight hours is permissible under the open view doctrine, and therefore did not transform Officer Pierson's observation inside the vehicle into a search.

Although Oliver argues on appeal that the vehicle's windows were tinted and therefore Officer Pierson still would not have been able to see through them during daylight hours without the aid of a flashlight, the record is undeveloped as to this fact and therefore this court cannot rely on it as a basis for finding that a motion to suppress brought by defense counsel would have succeeded.[2]

On the record before us, defense counsel was not ineffective for failing to bring a motion to dismiss Officer Pierson's "search" of the Charger because it did not constitute a search under the open view doctrine.

2.    PLAIN VIEW EXCEPTION TO WARRANT REQUIREMENT

Next, we reject Oliver's contention that the trial court found that the "plain view" exception to the warrant requirement applied to Officer Pierson's initial "search" of the

---

[2] Oliver maintains that it is the State's burden on appeal to show that Officer Pierson could have seen the firearm through the window without the aid of a flashlight during daylight hours. However, the defendant, not the State, carries the burden in an "ineffective assistance of counsel" claim. *See State v. McFarland*, 127 Wn.2d at 335.

vehicle.[3] Following the bench trial, the trial court entered findings of fact, conclusions of law, and a judgment in which the court determined that the firearm was in "plain view" to any individual sitting on the passenger side of the Charger and also in "plain view" when Officer Pierson looked through the window. This conclusion was part of the trial court's finding of guilt, it was not a finding that the plain view exception to the warrant requirement applied. At the time the court entered the finding it was not addressing any allegations of a warrantless search.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____          _____
Fearing, C.J.                                                    Pennell, J.

_____

[3] Oliver also assigns error to the trial court's conclusions that the possession or control of the firearm occurred in the State of Washington and each of the elements of unlawful possession of a firearm were proved beyond a reasonable doubt. However, he fails to provide argument in support of his assignments of error and we therefore decline to consider it. *See State v. Stubbs*, 144 Wn. App. 644, 652, 184 P.3d 660 (2008) ("Passing treatment of an issue or lack of reasoned argument is insufficient to allow for our meaningful review."), *rev'd on other grounds*, 170 Wn.2d 117, 240 P.3d 143 (2010).